HARRISON, RESPONDENT, *v.* RIDDELL ET AL., APPELLANTS.

(No. 4,861.)

(Submitted September 16, 1922. Decided October 19, 1922.)

[210 Pac. 460.]

*Equity—Creditor's Bill—Fraudulent Conveyances—Husband and Wife—Burden of Proof—Transfer of Corporate Stock in Fraud of Judgment Creditor—Record on Appeal—Bills of Exceptions.*

Appeal from Judgment—Bill of Exceptions Part of Record on Appeal Under 1907 Code.
   1. On appeal taken from the judgment under section 7112, Revised Codes of 1907, prior to its repeal by Chapter 225, Laws of 1921, a bill of exceptions was properly a part of the record on appeal.

Bulk Sales Law—Inapplicable to Claims Arising *Ex Delicto.*
   2. *Held,* that the Bulk Sales Law (secs. 8607–8611, Rev. Codes 1921) applies only to claims arising *ex contractu,* and not to unliquidated claims *ex delicto,* such as a claim for damages for a personal injury.

Same—Purpose of Act.
   3. The Bulk Sales Law has but one aim, *viz.,* to prevent a sale of goods in bulk until the creditors of the seller have been paid in full.

Fraud—Question of Fact—Presumptions.
   4. Actual fraud is always a question of fact to be established by competent evidence, since fraud cannot be presumed.

Fraudulent Conveyances—Burden of Proof.
   5. One who attacks a conveyance as fraudulent has the burden of proof; a mere suspicion that the transaction is fraudulent not being sufficient.

Same—Transactions Between Husband and Wife.
   6. An alleged fraudulent transfer of property by a husband to his wife should be closely scrutinized on account of the opportunities afforded by the relation, but a husband, honestly indebted to his wife may give her a valid preference either by transfer of money or property in payment or by giving security, to the same extent as he may prefer any other creditor, and such preference is not of itself fraudulent as to other creditors of the husband.

---

   3. Rights between parties to sale in violation of Bulk Sales Law, see note in 5 A. L. R. 1517.
   5. Burden of proof as to fraud against creditors in transfer from husband to wife, see note in 56 L. R. A. 823.

[64 Mont. 466.]

Equity—Appeal and Error—Power of Supreme Court to Make Findings and Direct Entry of Judgment.

7. In an equity case, where the evidence is all before the supreme court, it is authorized to make independent findings of its own respecting the rights of the parties overlooked by the trial court, and to direct entry of a proper judgment.

Fraudulent Conveyances—Creditor's Bill—Transferring Corporate Stock in Fraud of Judgment Creditor.

8. *Held*, in an action in the nature of a creditor's bill, that where plaintiff had been injured in an automobile accident and the owner thereof shortly thereafter incorporated his business, transferring certain shares of the stock to his former employee who executed a note therefor to the corporation instead of to the owner, for the evident purpose of preventing plaintiff from enforcing any judgment he might, and which he thereafter did, recover against the transferee, the transaction under the circumstances constituted a fraud as to the plaintiff, and that therefore the corporation must be held a trustee of the note and money collected thereon for the benefit of the automobile owner, subject to execution in satisfaction of plaintiff's judgment against him.

*Appeal from District Court, Silver Bow, County; Edwin M. Lamb, Judge.*

ACTION by N. J. Harrison against Kate Riddell and others. Judgment for plaintiff and defendants appeal. Modified.

*Messrs. Walker & Walker* and *Mr. C. S. Wagner,* for Appellants, submitted an original and a supplemental brief; *Mr. Wagner* argued the cause orally.

If, under the pleadings and the proven facts in this case, the plaintiff is a creditor of Joseph A. Riddell, within the meaning of the Bulk Sales Law of Montana, and may under the circumstances of this case avail himself of its provisions, then the transfer to the corporation must be deemed to have been made in fraud of plaintiff's rights, and the transaction would be denominated as fraud in law, in which event the judgment must be affirmed. However, it has been held that the omission of the name of a single creditor under facts and circumstances as are disclosed in this case will not avail the injured creditor to have the sale disturbed. (*International Silver Co.* v. *F. G. Hull & Co.,* 140 Ga. 10, 45 L. R. A. (n. s.) 492, 78 S. E. 609; *Glantz* v. *Gardiner,* 40 R. I. 297,

8. Creditor's bill to reach property fraudulently transferred, see note in Ann. Cas. 1914B, 948.

L. R. A. 1917F, 226, 100 Atl. 913; *Coach* v. *Gage,* 70 Or. 182, 138 Pac. 847; *Cowan* v. *Staggs,* 178 Ala. 144, 59 South. 153; *Welch* v. *Mann,* 193 Mo. 304, 92 S. W. 98, 104.)

It is our contention that the claim of a tort creditor who has not begun his action or reduced his claim to judgment prior to the time the transfer is made by a vendor of goods, wares and merchandise in bulk is not such a creditor as is contemplated by the Bulk Sales Law (15 C. J. 1370), that in such a case the same rule should prevail as is applied to provable debts in bankruptcy (7 C. J. 300), and the question of fraudulent intent in such a case is one of fact and not of law under the express provisions of section 6130, Revised Codes of Montana of 1907. Bulk Sales Laws are in derogation of the common law, and of a person's right to alienate his property without restriction, and are therefore to be strictly construed. (12 R. C. L., p. 525; *Ferrat* v. *Adamson,* 53 Mont. 172, 163 Pac. 112; *Swift & Co.* v. *Tempelos,* 178 N. C. 487, 7 A. L. R. 1581, 101 S. E. 8.)

It is true that Harrison became the creditor of J. A. Riddell when the tort was committed, and that his right of action was a valid and subsisting right at the time the corporation was formed. (*Pittsmont Copper Co.* v. *O'Rourke,* 49 Mont. 281, 141 Pac. 849.) But in attacking the conveyance as fraudulent under the Bulk Sales Law it was necessary for the plaintiff to show the existence of a subsisting debt against the defendant at the time the alleged fraudulent conveyance was made. (20 Cyc. 757; *Ewaniuk* v. *Rosenberg,* 34 N. D. 93, 157 N. W. 691; see, also, 26 Am. & Eng. Ency. of Law, 602.)

It is conceded that a number of courts in constructing Bulk Sales Laws have held that the term "creditor" is used in its broad and general scope, as, for instance, in the case of *Hartwig* v. *Rushing,* 93 Or. 6, 182 Pac. 177, but it will be observed that the Oregon statute does not contain the restrictive language of our statute.

We must concede that the supreme court of Washington in construing the Bulk Sales Law of that state held that the word

[64 Mont. 466.]

"creditor" is used in its broad sense (and their statute is similar to ours), and that the restrictive language of the statute upon which we rely adds nothing to the statute but simply confuses. (*Eklund* v. *Hopkins,* 36 Wash. 179, 78 Pac. 787.) But the decision in that case was not based upon a tort claim, and since it is manifest from all of the decisions that the primary object of the Bulk Sales Law is to protect the contract creditors of the merchant, we think that decision should not carry weight in the case at bar. Furthermore, diligent search has failed to reveal any decision holding that a claimant *ex delicto* who has not acquired a lien upon the property sold is a creditor within the meaning of the Bulk Sales Law. We contend, however, that this later Washington decision in *Maskell* v. *Spokane Cycle etc. Co.,* 100 Wash. 16, L. R. A. 1918C, 929, and case note on page 932, 170 Pac. 350, is controlling; see, also, 20 Cyc. 404, 405, note 85; *Bryne etc. Dry Goods Co.* v. *Willis-Dunn Co.,* 23 S. D. 221, 29 L. R. A. (n. s.) 589 and note, 121 N. W. 620.

*Mr. Harry Meyer,* for Respondent, submitted an original and a supplemental brief and argued the cause orally.

The Bulk Sales Law protects all creditors. (*Galbraith* v. *Oklahoma State Bank,* 36 Okl. 807, 130 Pac. 541; *Eklund* v. *Hopkins,* 36 Wash. 179, 78 Pac. 787; *Joplin Supply Co.* v. *Smith,* 182 Mo. App. 212, 167 S. W. 649.) In Indiana it has been held that a statute is unconstitutional if it attempts to protect mercantile creditors only. (*McKinster* v. *Sager,* 163 Ind. 671, 106 Am. St. Rep. 268, 68 L. R. A. 273, 72 N. E. 854.) "Recent cases * * * show a general disposition on the part of the courts to afford creditors of one who has made a sale in violation of the Bulk Sales Law every reasonable remedy, both at law and in equity, to protect and enforce their rights." (L. R. A. 1916B, 974, note; see, also, *Brown Shoe Co.* v. *Sacks* (Mo. App.), 211 S. W. 133; *Fitzhugh* v. *Munnell,* 92 Or. 47, 179 Pac. 679; *Gregg* v. *Reisinger,* 110 Wash. 680, 188 Pac. 765, 193 Pac. 237; *Kohn* v. *Fishback,* 36

Wash. 69, 104 Am. St. Rep. 941, 78 Pac. 199; *Wheeler &
Motter Merc. Co.* v. *Moon,* 49 Mont. 307, 141 Pac. 665.)

Fraudulent conveyances: See *Koopman* v. *Mansolf,* 51 Mont.
48, 149 Pac. 491; *Knapp* v. *Andrus,* 56 Mont. 37, 180 Pac.
908; *Taylor* v. *Malta Mercantile Co.,* 47 Mont. 342, 132 Pac.
549; *Morris* v. *McLaughlin,* 25 Mont. 151, 64 Pac. 219; *Mer-
chants' Nat. Bank* v. *Greenhood,* 16 Mont. 395, 41 Pac. 250,
851; *Lambrecht* v. *Patten,* 15 Mont. 260, 38 Pac. 1063; *Knox*
v. *Blanckenburg,* 28 Cal. App. 298, 152 Pac. 59; *Fahey* v.
*Fahey,* 43 Colo. 354, 127 Am. St. Rep. 118, 18 L. R. A.
(n. s.) 1147, 96 Pac. 251; *Sewell* v. *Price,* 164 Cal. 265, 128
Pac. 407; *Guthrie* v. *Carney,* 19 Cal. App. 144, 124 Pac. 1045;
*Godfrey* v. *Miller,* 80 Cal. 420, 22 Pac. 290; *Rennells* v. *Potter,*
198 Mich. 49, 164 N. W. 475; *Martell* v. *Dorey,* 235 Mass. 35,
126 N. E. 354. The foregoing decisions show that it is the
intent of the law to aid persons in the position of the plaintiff.

"The well-nigh universal rule is that claims for damages
arising from torts are within the protection of the statutes
against fraudulent conveyances." (20 Cyc. 430.)

MR. JUSTICE GALEN delivered the opinion of the court.

In this case it appears that on the twenty-third day of
October, 1916, in the city of Butte, the plaintiff, while walk-
ing on a street, was struck and injured by an automobile
belonging to J. A. Riddell, in which the latter was riding,
then being driven by his agent and servant, one Roy Williams.
At the time of the accident J. A. Riddell was, and for more
than ten years theretofore had been, personally conducting
business in Butte under the name and style of "Riddell Paint
& Art Company." For at least one year prior to this acci-
dent J. A. Riddell, being in poor health, had in contemplation
incorporating his business so as to be relieved of active
management thereof, avoid administration on his estate,
and by a gift of portions of the authorized capital stock
in the contemplated corporation to his son, A. M. Riddell,
and P. C. Dietler, trusted and faithful employees, rec-
ognize and compensate them for many years of service ren-

[64 Mont. 466.]

dered in the business at nominal salaries. On October 30, 1916, in pursuance of such plan, the "Riddell Paint & Art Company" was regularly incorporated by J. A. Riddell, A. M. Riddell and P. C. Dietler, under the laws of the state of Montana, with an authorized capital of $50,000, divided into 500 shares of the par value of $100 per share. On October 31, .1916, J. A. Riddell made transfer to the corporation of such business and all assets and property connected therewith, and shares of the capital stock of the corporation were issued as follows: J. A. Riddell, 250 shares; A. M. Riddell, 150 shares; and P. C. Dietler, 100 shares. Of the stock so issued, A. M. Riddell was given all of his for past services, and P. C. Dietler was given on like account sixty shares, and executed his promissory note in payment of forty shares to the corporation, in the sum of $4,000. At the time of the transfer of the business and property to the corporation, the inventory showed it to have a value of $50,000.

On December 8, 1916, J. A. Riddell, being indebted to his wife, the defendant Kate Riddell, for money advanced by her and used in the business, aggregating about $15,000, made transfer to her of 249 shares of the capital stock by him owned, and held in the corporation, and on June 27, 1917, assigned and transferred to her the one remaining share of stock by him held in the corporation. J. A. Riddell personally paid all of the hospital bills of the plaintiff occasioned by the accident, and, when the corporation took over his business, it assumed all of the outstanding obligations of the business, but no indebtedness to the plaintiff was considered or recognized, nor was the Bulk Sales Law complied with.

The plaintiff never made any claim or demand against either J. A. Riddell or the corporation until the institution of an action for damages by him in the district court of Silver Bow county on July 17, 1917, wherein J. Alexander Riddell, doing business as the "Riddell Paint & Art Co.," and Roy Williams, were made defendants. It will be noted that the business was incorporated just one week after the accident, and that the action was not commenced until after J. A. Riddell had

assigned all of his stock in the corporation to Kate Riddell, his wife. Upon issue joined, that case was tried by the court with a jury and resulted in a verdict and judgment against the defendants named therein for $1,500 and costs. Thereafter three several executions on the judgment were issued, one on January 31, 1918, one on February 15, 1919, and the other on October 24, 1919, all of which were regularly returned by the sheriff, wholly unsatisfied, save and except as to the sum of one dollar collected and applied thereon. Later, after returns on such executions *nulla bona* were made by the sheriff, it appears that a hearing in supplementary proceedings was had on March 15, 1919, and, it not having disclosed any property belonging to J. A. Riddell subject to be applied in satisfaction of the judgment, this action was instituted in equity, in the nature of a creditor's bill, to subject the property of the defendant corporation to payment of plaintiff's judgment, alleging that the transfer made by J. A. Riddell was in fraud of plaintiff's claim as a creditor, and contrary to the provisions of the Bulk Sales Law (secs. 8607 to 8610, inclusive, Rev. Codes 1921). Upon issue joined by answer, this cause was tried to the court without a jury and resulted in findings of fact and conclusions of law in favor of the plaintiff, upon which judgment was duly entered against the defendants herein for the full amount of the judgment, interest and costs in the case of *N. J. Harrison v. J. Alexander Riddell and Roy Williams.* The court made findings of fact in substance as follows: That the transfer from Joseph A. Riddell to the corporation was in fraud of plaintiff's rights; further that the transfer was made without any compensation therefor being paid to or received by Joseph A. Riddell; that the transfer was made with intent to hinder, delay, and defraud plaintiff and to prevent him from satisfying any judgment he might recover against Joseph Riddell on account of the injuries received by plaintiff; that the transfer of 150 shares of stock to A. M. Riddell was without any consideration, and made with intent to hinder, delay and defraud plaintiff; that the transfer to Kate Riddell of 249 shares of the corpora-

[64 Mont. 466.]

tion stock was made without consideration and with intent to hinder, delay and defraud plaintiff, and that Kate Riddell well knew the transfer to be made with intent to hinder delay and defraud plaintiff, and was made for the purpose of preventing plaintiff from satisfying any judgment he might recover against Joseph Riddell by reason of the injuries sustained by him through the carelessness and negligence of Joseph Riddell.

And as conclusions of law the court found: That the judgment recovered by plaintiff on the fifteenth day of November, 1917, is a lien upon the corporate property; that the transfer of the property to the corporation obstructs and interferes with the right of plaintiff to levy upon and sell at execution sale the property affected by the transfer; that the transfer was and is void and should be set aside as to the plaintiff; that execution be levied upon the property of the Riddell Paint & Art Company, a corporation, or so much thereof as may be sufficient to satisfy plaintiff's judgment against Joseph Riddell and Roy Williams, and if the judgment may not be so satisfied, that the transfer of 150 shares of corporation stock to A. M. Riddell be set aside and subjected to execution to satisfy plaintiff's judgment; that the interest of Kate Riddell in 249 shares of the corporate stock is subject to execution to satisfy the claim of plaintiff against Joseph Riddell, and the transfer of the shares of stock to her is void and is set aside as to the plaintiff; that all of the corporate property or so much thereof as may be necessary to satisfy plaintiff's judgment is set aside for the payment thereof, free from any right or lien of defendants.

This appeal is from the judgment; the evidence being incorporated in the transcript by a bill of exceptions.

It is contended by the plaintiff that the bill of exceptions is [1]  not properly a part of the record on appeal, and motion is made to strike the same from the record on the ground that upon an appeal from the judgment alone the court cannot review the insufficiency of the evidence. There is no merit in the motion. The statute expressly authorized this character

of record on an appeal from a final judgment. It read before its repeal (secs. 19 of Chapter 225, Laws 1921) as follows: "On an appeal from a final judgment, the appellant must furnish the court with a copy of the notice of appeal, of the judgment-roll or of such parts thereof as may be necessary to be considered on the appeal, and of any bill of exceptions upon which the appellant relies. Any statement of the case settled after the decision of the motion for a new trial, when the motion is made upon the minutes of the court, as provided for in section 6796 (1173), or any bill of exceptions settled as provided for in section 6787 (1154) or in section 6788 (1155), or used on the motion of [for] a new trial, may be used on appeal from a final judgment equally as upon appeal from the order granting or refusing a new trial." (Sec. 7112, Rev. Codes 1907.)

This statute was in effect when the appeal in this case was perfected (March 16, 1921), the repeal not having become operative until July 1, 1921. (Sec. 20, Chap. 225, Laws 1921.) In applying this section of the statute, the same being an amendment (sec. 1, Chap. 42, Laws 1907) of section 1736 of the Civil Code of Procedure of the Annotated Codes of 1895, Mr. Justice Holloway, speaking for this court, said: "It was doubtful whether a bill of exceptions settled after trial could be used on appeal from a final judgment in any event, and, apparently for the purpose of making definite that which was uncertain, section 1736 was amended in 1907 (Laws 1907, Chap. 42). The amended Act made the record on appeal from a final judgment to consist of the notice of appeal, the judgment-roll or such parts of it as might be necessary to be considered, and any bill of exceptions upon which the appellant relies. As if to leave no possible room for doubt as to what was intended, the amended Act provides further: 'Any statement of the case settled after the decision of the motion for a new trial, when the motion is made upon the minutes of the court, as provided for in section 6796 (1173), or any bill of exceptions settled as provided for in section 6787 (1154) or in section 6788 (1155), or used on the motion of a new trial,

may be used on appeal from a final judgment equally as upon appeal from the order granting or refusing a new trial.' This language appears to be sufficiently explicit. Any bill of exceptions settled pursuant to section 1154 (6787, Rev. Codes) or section 1155 (6788, Rev. Codes), whether used on motion for a new trial or not, may be used on appeal from a final judgment." (*Ferrat* v. *Adamson*, 53 Mont. 172, 163 Pac. 112; see, also, *Batchoff* v. *Butte Pacific Copper Co.*, 60 Mont. 179, 198 Pac. 132.)

As we view this appeal, there are but two questions presented determinative thereof, namely: (1) Does the Bulk Sales Law (secs. 8607–8611, Rev. Codes 1921) apply to the transfer made by J. A. Riddell of his business and property connected therewith to the corporation, as respects the unliquidated claim of the plaintiff at the time of such transfer? (2) Was the transfer of the business and property made by J. A. Riddell to the corporation a fraud upon the plaintiff?

The case was briefed and argued orally principally upon the question of the applicability of the Bulk Sales Law.

1. If the Bulk Sales Law is properly applicable to the plain-
[2] tiff's demand as an existing creditor at the time of the transfer of the property to the corporation, then a fraud in law was perpetrated upon the plaintiff, and defendant corporation is liable to pay the amount of the judgment, as the statute requiring a verified listing of the creditors by the seller was not complied with at the time the transfer was made to it. The statute makes it "the duty of every person who shall bargain for or purchase any stock of goods, wares, or merchandise in bulk, for cash or on credit * * * to demand of and receive from such vendor" a verified written statement containing "the names and addresses of all the creditors of said vendor, to whom said vendor may be indebted, together with the amount of the indebtedness due or owing, and to become due or owing, by said vendor to each of said creditors." And in the form of oath prescribed to be attached to such list of creditors, made by the vendor it is recited: "That the foregoing statement contains the names of all the creditors

of (the name of the vendor), together with their addresses, and that the amount set opposite each of said respective names is the amount now due and owing, and which shall become due and owing by (vendor) to such creditors, and that there are no creditors holding claims due, or which shall become due for or on account of goods, wares, or merchandise purchased upon credit or on account of money borrowed to carry on the business of which said goods are a part, other than as set forth in said statement, and in this affidavit." (*Id.*, sec. 8607.) And whenever any vendee of such property makes purchase thereof "without first having demanded and received from said vendor, or from his agent, the statement provided for in the preceding section, and verified as there provided, and without paying, or seeing to it, that the purchase money of the said property is applied to the payment of the *bona fide* claim of the creditors of the vendor, as shown upon such verified statement, *pro rata,* such sale or transfer shall be fraudulent and void." (*Id.*, sec. 8608.) And it is provided that: "A sale or a transfer in bulk, in contemplation of this Act, shall be deemed to be any sale or transfer of an entire stock of goods, wares, or merchandise out of the usual or ordinary course of business or trade of the vendor, or attempted to be sold or conveyed; provided, however, that if such vendor produces and delivers a written waiver of the provisions of this Act from his creditors, as shown by such verified statements, then in that case the provisions of this Act shall not apply." (*Id.,* sec. 8610.)

The failure of the buyer of a stock of merchandise in bulk to comply with the provisions of the statute regulating such sale converts him into a trustee of the property bought, to the extent at least of existing creditors of the vendor at the time of the sale. (*Wheeler & Motter Mer. Co.* v. *Moon,* 49 Mont. 307, 317, 141 Pac. 665; *Kohn* v. *Fishback,* 36 Wash. 69, 104 Am. St. Rep. 941, 78 Pac. 199.) And such a sale made without compliance with the law is a fraud upon the creditors of the vendor. Question arises as to whether plaintiffs' demand

is of such a nature as to come within the Act. The scope and purpose of the law was to regulate the sale in bulk of such articles as the merchant keeps for sale in the ordinary course of business (*Ferrat* v. *Adamson*, 53 Mont. 172, 163 Pac. 112) ; and it seems clear that it was intended only to protect creditors incident to the conduct of the business. It is argued that the plaintiff became a creditor of J. A. Riddell October 23, 1916, the date of the accident, although the amount of his claim was not determined until reduced to judgment November 15, 1917. In support of this contention the plaintiff relies upon the decision of this court in the case of *Pittsmont Copper Co.* v. *O'Rourke*, 49 Mont. 281, 141 Pac. 849, wherein it is held that one personally injured by the tort of another becomes a creditor of the latter the day on which the former's cause of action arises. This doctrine we recognize as a general statement of the law, but it has no application to the class of creditors intended to be given protection under the Bulk [3] Sales Law. That this is true must be apparent. The statute has but one aim, *viz.*, "to prevent a sale of goods in bulk until the creditors of the seller have been paid in full." (12 R. C. L. 525.) It is a matter of common knowledge that the main purpose of the law is to protect the wholesaler. (*Escalle* v. *Mark*, 43 Nev. 172, 5 A. L. R. 1512, 183 Pac. 387.) It applies to known existing obligations to creditors of the business, rather than unliquidated choses in action arising in tort against the owner personally, as the affidavit prescribed recites that "There are no creditors holding claims due * * * for or on account of goods, wares, and merchandise purchased upon credit or on account of money borrowed to carry on the business of which said goods are a part." (Sec. 8607, Rev. Codes 1921.)

No one would be enabled to sell his business because of possible liability arising in tort, and it would be utterly impossible for the vendee to comply with the provisions of the Act requiring him to see to it "that the purchase money * * * is applied to the payment of the *bona fide* claims of the creditors of the vendor." (*Id.*, sec. 8608.)

We must and do hold, from a consideration of the plain provisions of the Act, that it applies only to claims arising *ex contractu*, and not to unliquidated claims *ex delicto*. To give it any other construction would make it inoperative.

2. As to whether the transfer of the business and property [4–6] constituted a fraud in fact upon the plaintiff, we must look to the facts disclosed at the trial. Actual fraud is always a question of fact. (Sec. 7482, Rev. Codes 1921.) Fraud cannot be presumed. As any other fact, it must be established by competent evidence. One who attacks the validity of a conveyance must assume *in limine* the burden of proof, even though it arose out of dealings between husband and wife. A mere suspicion that it is fraudulent is not sufficient to overturn it. (*Wilson* v. *Harris*, 21 Mont. 374, 54 Pac. 46.) "In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract." (Sec. 8600, Rev. Codes 1921.)

"A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." (*Id.*, sec. 8601.)

"A debtor, within the meaning of this chapter, is one who, by reason of an existing obligation, is or may become liable to pay money to another, whether such liability is certain or contingent." (*Id.*, sec. 8598.)

"A creditor, within the meaning of this chapter, is one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money." (*Id.*, sec. 8599.)

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would othewise have had it." (*Id.*, sec. 7887.)

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject in trans-

actions between themselves to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the provisions of this code relative to trusts." (*Id.*, sec. 5786.) And, "while transfers of property by a husband to his wife should when charged as being fraudulent be very closely scrutinized on account of the opportunities afforded by the confidential relation of the parties for the perpetration of fraud, yet a husband honestly indebted to his wife may give her a valid preference, either by transfer of money or property in payment, or by giving security to the same extent as he may prefer any other creditor, and such a preference is not of itself fraudulent as to other creditors of the husband." (20 Cyc. 599; *Lambrecht* v. *Patten*, 15 Mont. 260, 38 Pac. 1063; *Koopman* v. *Mansolf*, 51 Mont. 48, 149 Pac. 491.)

In equity this court will go further than merely a consideration of the correctness of the findings of fact and legal conclusions made by the trial court upon which its judgment is based; and where it satisfactorily appears, as in this instance, that the execution of the Dietler note to the corporation was a fraud upon the plaintiff, it will be applied in satisfaction of the plaintiff's judgment. [7]

The evidence being all before us, we are authorized in equity to make independent findings of fact, respecting the rights of the parties overlooked by the trial court, and to direct entry of a proper judgment. (Sec. 8805, Rev. Codes 1921; *Walsh* v. *Hoskins*, 53 Mont. 198, 162 Pac. 960; *Barnard Realty Co.* v. *City of Butte*, 55 Mont. 384, 177 Pac. 402; *Lowry* v. *Carrier*, 55 Mont. 392, 177 Pac. 756.)

We have carefully weighed and viewed all of the evidence, and do not consider that the findings as made by the district court are warranted. A review of the evidence further than that already appearing in the recital of facts would serve no useful purpose. The record does not disclose the proceedings on organization of the corporation, or those had on transfer of the business and property; but it does conclusively appear that at the time of the organization of the cor- [8]

poration the business and property of J. A. Riddell was rea-
sonably worth the sum of $50,000, and that he was sole owner
thereof; that the transfer of the same was made in considera-
tion of the issuance and delivery of all of the capital stock of
the corporation, *viz.,* 500 shares of the par value of $100 per
share.  It appears that these shares were issued in purchase of
the property and business from J. A. Riddell, and that they
were delivered as by him directed.  At the time of their issuance
he was entitled to all of them in exchange for the property and
business transferred to the corporation.  On his account and be-
cause of obligations to A. M. Riddell, his son, 150 shares were
issued and delivered to the latter; 250 shares were issued and
delivered to J. A. Riddell, which he subsequently assigned
and transferred to his wife, Kate Riddell, in payment of an
indebtedness to her; 100 shares were issued and delivered to
P. C. Dietler, sixty shares being given the latter on account
of J. A. Riddell's obligation to Dietler, and forty shares ad-
ditional in consideration of the execution and delivery of a
promissory note by Dietler to the corporation in the sum of
$4,000.  The reason, if any existing, why this promissory note
was executed in favor of the corporation rather than J. A.
Riddell does not appear; but, as all of the capital stock of
the corporation equaled the value of the assets of the business
of J. A. Riddell at the time of the transfer thereof to the
corporation, it appears that the note was executed for the use
and benefit of J. A. Riddell, and that the corporation now
holds it, or the proceeds thereof, as trustee for J. A. Riddell,
and that the same should be applied in payment of the plain-
tiff's judgment.  Specifically the findings should be, and, as
we determine them, are, that the promissory note executed
by P. C. Dietler to the corporation was and is the property
of J. A. Riddell; that its execution and delivery to the corpo-
ration constituted a fraud as to the plaintiff herein; that the
corporation now holds the same or any money collected thereon,
in trust for J. A. Riddell; and that the same is property sub-
ject to execution in satisfaction of the plaintiff's judgment.
Accordingly, the case is remanded to the district court of

Silver Bow county, with directions to make findings as herein indicated, and to enter judgment in plaintiff's favor in accordance therewith.

*Modified.*

ASSOCIATE JUSTICES FARR, COOPER and HOLLOWAY concur.