MORIGEAU, RESPONDENT, v. LOZAR, APPELLANT.

(No. 6,214.)

(Submitted January 12, 1928.  Decided February 1, 1928.)

[263 Pac. 985.]

*Mortgage Foreclosure—Lack of Consideration—Fraud—Burden of Proof — Ratification — Presumptions — Contracts — Duty of Courts.*

Mortgage Foreclosure—Defense of Lack of Consideration—Burden of Proof.
1.  In a suit to foreclose a deed, given as a mortgage, the defendant, relying upon the defense of want of consideration, had the burden of showing a lack of consideration, the deed itself prima facie importing a consideration.

Same—Want of Consideration—When Defense Unavailing.
2.  Where defendant was conversant with the fact that money procured on a mortgage on her land was to be, and was, used to pay off an indebtedness of her father for supplies used by the family of which she was a member, and she made no complaint until action to foreclose was commenced, her defense that, having herself received but $50 in cash of the $4,000 loaned, there was a lack of consideration was unavailing.

Same—Defense of Fraud in Execution of Mortgage—Showing Required by Defendant.
3.  A party asserting fraud in the execution of a contract (mortgage), to make out a prima facie case, must show a false representation, its materiality, the speaker's knowledge of its falsity or his ignorance of the truth, his intent that it should be acted upon by the party claiming to have been defrauded, the latter's ignorance of its falsity, his reliance on its truth, his right to rely thereon, and his consequent and proximate injury.

Same—Fraud—When Defendant Held to have Ratified Transaction.
4.  Where one claiming to have been defrauded, with full knowledge of the facts relating to the transaction, waits for five years before making complaint and until the time when he is called upon to meet the obligation incurred, he will be held to have ratified it even though, in the first instance, he was induced to execute the instrument in question by his creditor's fraudulent representations.

Same—Fraud—Presumption—Burden of Proof.
5.  Fraud will not be presumed; the burden of proving it rests upon him who alleges it.

1.  See 6 Cal. Jur. 202; 6 R. C. L. 685.
4.  See 12 Cal. Jur. 795; 12 R. C. L. 412.
5.  Burden of proof as to fraud, see notes in 1 Ann. Cas. 809; Ann. Cas. 1912A, 711.  See, also, 12 Cal. Jur. 816; 12 R. C. L. 424.

[81 Mont. 434.]

Contracts—Duty of Courts to Enforce as Made, When.
  6. The function of courts is not to make contracts for parties
  sui juris, but to interpret and enforce them as made by the par-
  ties, when legitimate and based upon a valid consideration.

[1, 2] Mortgages, 41 **C. J.**, sec. 205, p. 387, n. 72; sec. 212, p. 390,
n. 4; sec. 214, p. 391, n. 24.
[3]  Contracts, 13 **C. J.**, sec. 280, p. 382, n. 30; sec. 979, p. 778,
n. 19.  Mortgages, 41 **C. J.**, sec. 331, p. 447, n. 46.
[4]  Mortgages, 41 **C. J.**, sec. 327, p. 444, n. 94.
[5]  Evidence, 22 **C. J.**, sec. 82, p. 147, n. 53.  Mortgages, 41 **C. J.**,
sec. 329, p. 445, n. 22.
[6]  Contracts, 13 **C. J.**, sec. 485, p. 525, n. 37.

*Appeal from District Court, Sanders County; James M. Self,
Judge.*

ACTION by Joseph Morigeau against Mary A. Morigeau Lozar.
Judgment for plaintiff and defendant appeals.  Affirmed.

*Mr. E. C. Mulroney,* for Appellant, submitted a brief and
argued the cause orally.

*Mr. A. S. Ainsworth,* for Respondent, submitted a brief and
argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

The plaintiff instituted this action to foreclose a deed as a
mortgage.  The cause was tried to the court without a jury,
and after the evidence was all submitted by both parties plain-
tiff and defendant, the court made special findings of fact and
conclusions of law in favor of the plaintiff, upon which judg-
ment of foreclosure was duly entered.  The defendant has ap-
pealed from the judgment.

Without conflict, it appears that at the date of the execution
of the deed the defendant's mother and father, with whom she
then resided, were indebted for merchandise to the Demers
Mercantile Company in the sum of $2,700.  That company con-
ducted a general store in the town of Arlee.  Mr. Demers was
insisting upon a settlement of the account, and the defendant

at the behest of her father and Mr. Demers interceded with the plaintiff, her uncle, in an endeavor to have him advance the money needed by her parents. As a result of her negotiations with the plaintiff, on October 19, 1920, he executed a mortgage to one Malloch on a tract of 120 acres of land belonging to him as security for the sum of $4,000 loaned to the plaintiff, payable on or before five years from date, the money being delivered to the Demers Mercantile Company to the credit of the defendant's father, Eli Morigeau. The money was by the Demers Mercantile Company applied in payment of Eli Morigeau's account, and the balance of $1,300 held to the latter's credit. Such balance later became exhausted in the payment of further debts contracted with the Mercantile Company, and therewith but five head of cattle were purchased. Of the amount of money so loaned, the defendant received only the sum of $50, which was given her by her father about one month after the money had been received. In arranging with the plaintiff for the money, and as an inducement to the plaintiff, the defendant agreed to give him as security a deed to a tract of 160 acres of timber land separately owned by her, which agreement was consummated. As of the same date, October 19, 1920, the defendant executed to the plaintiff the deed involved herein, conveying to him her 160-acre tract of land, as security for the sum of $4,000 which the plaintiff was to obtain on mortgaging his 120-acre tract of land; and the plaintiff and defendant thereupon executed a memorandum of agreement wherein it is recited that the defendant had executed a deed to the plaintiff for her 160-acre tract of land as security for the repayment of a loan of $4,000, with interest, payable on or before five years from date, such money to be used by the defendant "for the purchase of livestock for the benefit of the Morigeau family," of which Mary Morigeau "is an immediate member."

As a witness in her own behalf the defendant stated that her father, "Eli Morigeau, had quite a large account at the Demers Mercantile, and he wanted to borrow money on Joe Mori-

geau's place if Joe would give him permission, and he went down to see Joe by himself; he evidently was not successful and went to see Mr. Demers, and he asked me if I would go down and see Joe, Eli asked me, I didn't have no way, and Mr. Demers was anxious to have his account squared up, and he consented to take me down, another sister and I, and so we talked to Joe, we stayed overnight with Joe, and Joe would not consent, he said we would all lose our property and so we went back unsuccessful, and then Eli Morigeau suggested to Mr. Demers that I secure mine for $4,000, so Mr. Demers takes us down there again to see Joe and, after he talked to him for some time, Joe consented to borrow money on his place and lend to me as security on my place, I was to give him a mortgage for five years on my place for the $4,000, and so, I do not know how long after that Mr. Demers took Joe to Missoula to have these papers made out, I did not go along, and the understanding was that this was to be a mortgage and I was to receive this $4,000 for stock, as he before mentioned, this money was to be used exclusively for stock; in the first place, I told him I would not mortgage my land to pay bills, I would mortgage it for stock but no bills, and that was the understanding; I was to get this money from Joe Morigeau to buy cattle to stock up the Morigeau ranch with, that was my property."

And on cross-examination she testified: "Q. So now what did your father send you over there for, what was the purpose of getting that money, what did Eli say? A. He sent me over the first time to ask Joe if he would give permission to loan money on his place, the first time before he suggested myself.

"Q. Let's take the first time, what did your father, Eli, want with this money? A. He didn't state.

"Q. Didn't you state a while ago on direct that your folks owed a bill over at the Demers Mercantile Company and they wanted to pay that off? A. That was his purpose, I guess.

"Q. He told you that was the reason he wanted to have Joe raise the money on his place so as to help him out with the Demers Mercantile Company and the rest of the family, that

[81 Mont. 434.]

was the first thing? A. That is what he wanted to borrow it for.

"Q. And assisting your parents and trying to assist them you went over to see Joe if he would do that for Eli, your father? A. Yes. * * * Well, I could not do anything, it was there and Mr. Morigeau told me it was to pay the bills, and I told him that was not our agreement; our agreement was to buy stock, and our agreement was drawn up in that form, and whenever I would make any further suggestions I was always told he was running the business and I was not.

"Q. Who was running it? A. My father, Mr. Morigeau, he was the head of the family, and he merely told me I was not running the business. * * *

"Q. And during all the space of five years you never complained to Joe Morigeau in any way, shape, or manner about this $4,000 he had loaned to you? A. When I saw him I told him.

"Q. That was about five years afterwards? A. Well, something like that."

Before the maturity of the mortgage indebtedness from the plaintiff to Malloch, on March 25, 1925, the plaintiff executed to the defendant a deed for the timber growing on her 160-acre tract of land which land had theretofore been by her deeded to the plaintiff as security for the debt. Prior to the date of the execution of the last-mentioned deed, the defendant had never made complaint to the plaintiff of the manner in which the transaction was handled, and at that time she states that she called upon him at Hot Springs and demanded that he deed her property back to her, threatening that if he did not do so she would institute suit against him. He thereupon executed and delivered to her a deed for the timber growing on her land. She asserts it was a deed outright to her given in partial satisfaction of her demands against the plaintiff, whereas he claims that she misrepresented to him that she had an opportunity to sell the timber for about $3,500, and that if he would

sign the deed she would sell it and give him the money to apply on his $4,000 mortgage indebtedness to Malloch.

The defendant negotiated a sale of the timber without account to the plaintiff, but not until after the institution of this action. The Malloch mortgage, not having been paid by the plaintiff, was foreclosed and a deficiency judgment entered against him. Subsequent to the first transactions above alluded to, the defendant became the wife of Steve Lozar, and they now live together as husband and wife.

Defendant's specifications of error present but two questions for determination, viz.: (1) Alleged want of consideration for the mortgage deed executed by the defendant; and (2) alleged fraudulent misrepresentations inducing the execution of the mortgage deed sufficient to vitiate it. These subjects will be discussed and disposed of in their order.

1. The statute provides: "Any benefit conferred, or agreed [1, 2] to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise" (sec. 7503, Rev. Codes 1921); and "a written instrument is presumptive evidence of a consideration" (Id., sec. 7512).

Here, the deed itself imports a consideration, and from the facts it is manifest, under the statutory definition, that there was a valid consideration for the execution of the deed. The burden of showing want of consideration rested upon her (Id., sec. 7513; *Schauer* v. *Morgan*, 67 Mont. 455, 216 Pac. 347; *W. T. Rawleigh Co.* v. *Washburn*, 80 Mont. 308, 260 Pac. 1039), and she wholly failed to establish such contention. While the money was agreed to be advanced "for the purchase of livestock for the benefit of the Morigeau family," of which the plaintiff was then "an immediate member," there appears to have been no restraint on its use for other purposes. The defendant was for five years conversant with the way in which

the money was in fact used, and made no complaint to the plaintiff. She will not at this late date be heard to avoid her obligation by reason of the fact that the money was not delivered to her or expended for her personal benefit rather than for members of her family.

2. There is no evidence sufficient to establish actual fraud, **[3]** within the purview of section 7480 of the Revised Codes of 1921, and the mortgage deed cannot be by the defendant avoided on that ground. The statute (sec. 7480, Rev. Codes 1921) provides that actual fraud consists of any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; (3) the suppression of that which is true, by one having knowledge or belief of the fact; (4) a promise made without any intention of performing it; or (5) any other act fitted to deceive. (*Lee* v. *Stockmen's National Bank,* 63 Mont. 262, 207 Pac. 623.) And to make out a prima facie case, the party seeking to avoid a contract on the ground of actual fraud is required to prove: (1) A representation made; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. (*Lee* v. *Stockmen's National Bank,* supra.)

Here the proof wholly fails to establish fraud practiced by **[4]** the plaintiff upon the defendant. None of the elements of fraud are disclosed by the evidence. Without contradiction it appears that the defendant sought the loan to help her family, the money was provided by the plaintiff as requested, and the defendant with full knowledge of all of the existing

facts executed a deed to her land as security. Five years elapsed before she made complaint of the transaction to the plaintiff, and such delay, of itself, constituted a ratification (*McConnell* v. *Blackley*, 66 Mont. 510, 214 Pac. 64), even though the defendant had in the first instance been induced to execute the deed upon the plaintiff's fraudulent misrepresentations. Her charge of fraud is based upon the fact that the money advanced was not used to buy cattle for her, but the plaintiff had no control over the money after it had been advanced on her account, and her appeal made to the plaintiff for the money was to help her parents.

Fraud will not be presumed (*Harrison* v. *Riddell*, 64 Mont. **[5]** 466, 210 Pac. 460), and the burden rested upon the defendant to prove it (*Lee* v. *Stockmen's National Bank*, supra). In this she wholly failed.

3. "It is not the province of courts to make contracts for **[6]** parties *sui juris*, but rather to interpret and enforce them, as made by the parties themselves, in accordance with their terms, when legitimate and based upon a valid consideration." (*W. T. Rawleigh Co.* v. *Washburn*, supra.)

We find no reason to disturb the findings made by the trial court, and therefore the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.