COSTELLO, RESPONDENT, *v.* SHIELDS, SHERIFF, APPELLANT.

(No. 7,338.)

(Submitted March 8, 1935. Decided March 25, 1935.)

[43 Pac. (2d) 879.]

*Mr. Charles Davidson, Mr. A. S. Jardine* and *Messrs. Hall & McCabe,* for Appellant, submitted a brief; *Mr. Davidson* argued the cause orally.

*Mr. E. J. Stromnes* and *Mr. W. P. Costello,* for Respondent, submitted a brief; *Mr. Costello* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Cascade county. The action is by W. P. Costello against the sheriff of the mentioned county. The essential facts are as follows: One Annie Strong commenced an action for damages in the district court against Mary Lease and others. Verdict and judgment were rendered in favor of the plaintiff on December 4, 1930. Thereafter execution issued. On April 23, 1931, the sheriff levied upon thirteen head of cattle and sold them in accordance with the statute. The property was bought by plaintiff Strong for the full amount of the judgment. The cattle were seized and sold as the property of Mary Lease. After the levy and prior to the sale, Lena Bremer filed a third-party claim with the sheriff and demanded the release of the cattle. Annie Strong gave a bond to the sheriff to protect the levy, and the sale proceeded. The plaintiff here Costello, Mary Lease, and Lena Bremer were present at the

sale. Before proceeding with the sale the sheriff explained that the property was claimed by a third party, Lena Bremer, and was also covered by a contract or lease existing between Mrs. Lease and one Walter Smithers for the possession of the cattle on a share basis, and that the purchaser would buy the property subject to these considerations. After the cattle were purchased by the judgment creditor, the judgment was returned as satisfied and Mrs. Strong, through her attorney, Costello, attempted to deliver possession of the cattle to Smithers as her agent. In any event the cattle remained in Smithers' possession.

On May 22, 1931, an action was instituted by one Trowbridge against Annie Strong in a justice's court in Cascade county. An attachment was issued and levy made upon the same cattle as the property of Annie Strong. Thereafter plaintiff notified the sheriff that he had an attorney's lien against them by virtue of services rendered for the plaintiff in the original action in the district court, and demanded the release of the levy. The sheriff refused to make the release, whereupon Costello instituted this action. It appears that in the meantime a bond had been given the sheriff to protect him in the matter. The record shows that at some time later the cattle were released from the Trowbridge attachment, and it does not appear exactly what became of them.

In order to understand the controversy as to the ownership of the cattle, a detail of the facts is necessary. They were admittedly the property of Mary Lease prior to and on July 29, 1930. On that day Mrs. Lease executed a bill of sale transferring the cattle to her sister, Lena Bremer. This transfer, it will be observed, was made between the date of the institution of the suit and the entry of judgment. The bill of sale recites a consideration of "one dollar and other valuable consideration." The evidence shows that on August 2, 1930, a few days after the execution of the bill of sale, Mrs. Lease, Mrs. Bremer and other members of the family proceeded to the ranch where Walter Smithers was keeping the cattle. Mrs. Lease and Mrs. Bremer advised Smithers that Mrs. Lease

had sold and disposed of her interest in the cattle to Mrs. Bremer, and asked him to round them up that they might be inspected, counted, and delivered to Mrs. Bremer, so far as that could be done subject to the lease of Smithers, and that they wished Smithers to accept Mrs. Bremer as party to the lease in substitution of Mrs. Lease. The cattle were driven in from the pasture, segregated from other cattle, identified, and counted out. Smithers agreed to accept the substitution of parties and to keep the cattle under the terms of the lease subject to ownership in Mrs. Bremer rather than in Mrs. Lease. Thereafter the cattle were left in the possession of Smithers.

The consideration for the sale and transfer of the cattle finds its existence in obligations owing at the time by Mrs. Lease and her husband to Mrs. Bremer. It appears that about February 21, 1927, Mrs. Lease and her husband executed a promissory note and real estate mortgage to Mrs. Bremer for $5,000, with coupon notes for interest. This mortgage covered real property in Cascade county and was recorded. The consideration for the mortgage was cash advanced at different times by Mrs. Bremer to Mrs. Lease, and the sale price of a one-half interest in certain real estate. Later Mrs. Bremer consented that Mrs. Lease should borrow $1,000 from a third party, a Mrs. Weir, and allowed a mortgage to Mrs. Weir to become a first mortgage on the premises. The Weir mortgage was not paid by Mrs. Lease but was finally paid by Mrs. Bremer, to protect her lien. On February 1, 1930, the obligations were due. On July 29, 1930, the date of the bill of sale, the obligations being unpaid, Mrs. Lease and her husband conveyed by deed the real estate involved to Mrs. Bremer, and made the bill of sale covering the cattle. The real estate mortgage was satisfied of record. The attempt to deliver possession of the cattle was made, as indicated, and a settlement between Mrs. Lease and Mrs. Bremer thereby consummated.

Under the lease of the cattle, Smithers was to have possession of them for a term of two years ending October 15, 1931. It will be observed that the actual physical delivery of the cattle

in such a manner as to deprive Smithers of his possession was impossible in view of the provisions of the lease.

In his amended complaint plaintiff Costello alleged that on May 1, 1931, and at all times since that date, he had a special property in and right to the immediate possession of the cattle involved herein; that his special property was by virtue of an attorney's lien for services rendered by him in the original case in the district court wherein Annie Strong was plaintiff, and Mary Lease and others were defendants, and wherein a judgment was rendered in favor of Annie Strong, his client, in the sum of $770.85; that his interest in that judgment amounted to $464.50, by virtue of an account stated with Annie Strong; that no part thereof had been paid; and that by virtue of the judgment and his attorney's lien he had a superior lien on the judgment and on the proceeds thereof, and, the cattle being the proceeds of the judgment, he had a lien on them and was entitled to their possession. He alleged the facts of the execution and levy and of the subsequent action by Trowbridge, and the second levy on the cattle, and demanded judgment against the sheriff for the sum of $464.50, and interest for the wrongful taking.

The sheriff filed an answer in which he admitted certain of the allegations, but denied that he had ever at any time taken possession of and sold any cattle belonging to Mary Lease. He admitted that he had taken possession of certain cattle in the original action and had sold only the right, title, and interest of Mary Lease therein, but denied that she had actually owned them. He alleged that the cattle were in the possession of Walter Smithers at the time of the sale, by virtue of a right of possession contained in his lease. He admitted the levy of the writ of attachment in the Trowbridge action, that Costello had given notice of his claim, and demanded judgment in his favor.

A reply was filed by Costello denying the allegations of new matter contained in the answer, and alleging that Walter Smithers had disclaimed and waived any interest in the cattle, and had accepted the same as keeper for the sheriff in the

Trowbridge action, and that Smithers was estopped from denying the same.

The cause went to trial before the court without a jury. Plaintiff Costello was the only witness in his behalf. He testified to the facts of the litigation, the services rendered by him as attorney therein, and as to his lien and claim against the cattle by virtue thereof. Several witnesses testified in behalf of the defendant. An examination of the testimony makes it obvious that the testimony of Costello in reality details the facts of the transaction and his claim, but does not go to the question of the actual ownership of the cattle at the date of the sheriff's sale.

The testimony of the witnesses for the defendant specifically covers two essential questions involved in the case. It explains the nature, extent, and conditions of the indebtedness existing between Mrs. Lease and Mrs. Bremer at the time of the sale of the property to Mrs. Bremer, and very specifically covers the matter of the actual transfer and delivery of the cattle under the bill of sale.

Plaintiff's claim upon the cattle is predicated upon his attorney's lien asserted under and by virtue of section 8993, Revised Codes 1921, which provides that an attorney shall have a lien for his services upon a judgment and the proceeds thereof in whosesoever hands they may come.

Defendant asserts and relies upon six specifications of error. All of them go to the question of the sufficiency of the complaint and of the evidence. In our view of the case, there is really but one controlling question involved as a first consideration. That question goes to the ownership of the cattle at the time they were seized and sold by the sheriff in the case of *Annie Strong* v. *Mary Lease.*

The court made numerous findings covering the issues of the case. One of these findings is to the effect that at the time of the sale the cattle were the property of Mary Lease, and that the sale was lawful and regular, and that thereupon Annie Strong became the owner of the cattle subject only to the lien of the plaintiff. If the evidence supports this finding, or if

there is any substantial evidence in the record to support it, it will not be disturbed; but if the findings are without substantial support in the evidence, the judgment cannot stand.

Before considering the evidence it is important to decide ■ whether the bill of exceptions containing the record of the testimony is properly before this court. Plaintiff argues that the bill cannot be considered. It appears that on December 29, 1933, defendant (appellant) procured an order from the court granting sixty days' additional time to settle a bill of exceptions. Before the time so extended had expired, he filed an affidavit and request for additional time, which the court allowed. Plaintiff claims that this last order granting additional time was void; that the court had no jurisdiction to make it.

Section 9390, Revised Codes 1921, authorizes the court to allow such an extension of time ''upon affidavit showing the necessity for further time.'' Plaintiff asserts that the affidavit presented by defendant failed to show any necessity for the granting of additional time. The affidavit is before us as a part of the record. It recites that defendant is indemnified by an insurance company; that such company after being advised of the matter consulted with its attorneys; that due to illness and press of business, the attorneys thus consulted were unable to advise the insurance company promptly as to the advisability of appealing the action; that, due to this delay, defendant required additional time to prepare a bill of exceptions. This, we think, was a sufficient showing of necessity for further time to move the discretion of the court in the matter. It does not appear that the court abused its discretion in this respect. (*Dubie* v. *Batani,* 97 Mont. 468, 37 Pac. (2d) 662.)

As stated, the determinative question to be decided is ■ whether the cattle seized by the sheriff were the property of Mary Lease or of Lena Bremer, at the time they were sold to satisfy the judgment of Annie Strong. If they were the property of Mary Lease, then under the provisions of section 8993, Revised Codes 1921, plaintiff doubtless had a lien

against them for compensation for services rendered and money advanced on behalf of his client. But if the cattle were the property of Lena Bremer, and Mary Lease had no interest in them, then, clearly, Annie Strong did not by the levy and purchase at the execution sale acquire ownership. It would necessarily follow in such event that plaintiff could not, and did not, acquire any lien upon the cattle. This is true here because the plaintiff in his complaint, in addition to a general allegation that he had an interest in the property, makes special allegations wherein he assumes to deraign his title. Having thus undertaken to deraign his title or interest, he is bound by the special allegations. (*Paine* v. *British-Butte Min. Co.*, 41 Mont. 28, 108 Pac. 12; *Craig* v. *Burns*, 65 Mont. 550, 212 Pac. 856.)

The record discloses that the bill of sale and warranty deed ▅▅▅▅ were regular and bona fide in every respect. It is a fact that they were executed after the time when Annie Strong began her action against Mary Lease. However, in the face of the bill of sale and the evidence of transfer, the district court found that the cattle, at the time they were levied upon and sold, were the property of Mary Lease. Such a finding necessarily implies that the bill of sale executed by Mary Lease to Mrs. Bremer was tainted with fraud, that it was executed for the purpose of defeating the claims of the creditors of Mary Lease, although the record does not disclose any specific finding by the court on this point. If the bill of sale was bona fide and was supported by proper consideration, and was not fraudulent, there is no legal basis or reason for the court's finding that the cattle were the property of Mary Lease at the time of the sale. Fraud is never presumed but must be pleaded and proved. (*Harrison* v. *Riddell*, 64 Mont. 466, 210 Pac. 460; *Morigeau* v. *Lozar*, 81 Mont. 434, 263 Pac. 985; *Cuckovich* v. *Buckovich*, 82 Mont. 1, 264 Pac. 930.)

It is true that the bill of sale was executed subsequent to the time when Annie Strong instituted her action against Mrs. Lease, but this fact alone does not suffice to establish the act

as fraudulent, or to destroy the force of the instrument on the ground that it was executed to perpetrate a fraud.

Section 8601, Revised Codes 1921, provides that "a debtor may pay one creditor in preference to another or may give one creditor security for the payment of his demand in preference to another." In accordance with this statute it has been held by this court that "a debtor, even though insolvent, may prefer one creditor to another or give security to one in preference to another; the preference may be made by conveyance of property, real or personal, either directly to the creditor or to a third person for the creditor's benefit, and, if made, the property is not subject to seizure under legal process." (*Department of Agriculture* v. *DeVore*, 91 Mont. 47, 6 Pac. (2d) 125; *Hale* v. *Belgrade Co.*, 75 Mont. 99, 242 Pac. 425, 430; *Harrison* v. *Riddell*, 64 Mont. 466, 210 Pac. 460.) In the *Hale Case*, supra, the court quoted with approval the following from 27 C. J. 634: "An actual preference of a valid debt is not rendered fraudulent by the fact that it was made and accepted with the intent to defeat a judgment or execution against the debtor. The fact that a transfer is made by an insolvent debtor on the eve of rendition of judgments against him is at most a badge of fraud; and when it appears that the transfer is a sale to a creditor in payment of a debt admitted to be justly due, and for a full and fair price, and that the debt is thereby discharged, all presumption of fraud arising from pendency of the suit is thereby removed." In the case of *Department of Agriculture* v. *DeVore*, supra, the court quoted the following from the same volume of C. J., at page 618: "If the creditor obtains only what is due him, there cannot be said to be fraud in the transaction. One creditor of a failing debtor is not bound to take care of another, or to abate any degree of vigilance in looking after his own rights in order to give some other creditor a chance equal or superior to his own. He may even use influence to induce his debtor to give a preference."

Here the parties to the transfer are sisters. However, the fact of that relationship, standing alone, does not necessarily brand the transaction with a badge of fraud. Transactions between near relatives are subject to the most rigid scrutiny, and the fact of such relationship is to be considered with other evidence as reflecting the intention with which the transfer was made. (*Security State Bank* v. *McIntyre,* 71 Mont. 186, 228 Pac. 618.) Where a debtor is honestly indebted to a near relative, he may give a valid preference, either by transfer of money or property in payment, or by giving security to the same extent as he might prefer any other creditor, and such preference is not of itself fraudulent as to other creditors of the debtor. (See *Harrison* v. *Riddell,* supra.) Here it appears by uncontroverted evidence that Mary Lease was honestly indebted -to her sister, Mrs. Bremer, in an amount exceeding $6,000. Being unable to repay this indebtedness, and wishing to give her sister a preference over other creditors, she executed the bill of sale and warranty deed to her. Under the authorities it is clear that this alone could not constitute a fraudulent transaction. It was merely a preference of one creditor over others, which is legally justified under our statute (sec. 8601, supra) and the decisions of this court.

Plaintiff contends that notwithstanding the bill of sale, Mrs. Bremer never became the owner of the cattle because there was never any legal transfer of possession, but that Mrs. Lease continued to retain possession of them. We find no merit in this contention. The cattle were actually in the possession of Smithers by virtue of a bailment or lease contract entered into between Mrs. Lease and Smithers. The latter was entitled to possession under that contract, and actual delivery of possession to Mrs. Bremer was not possible. The record discloses that the parties did all they could under the circumstances to turn over possession of the cattle to Mrs. Bremer.

Plaintiff suggests that the cattle bore the brand of Mary Lease; that the brand was not vented; and that therefore they, prima facie, remained the property of Mrs. Lease, citing section 3304, Revised Codes 1921. There is uncontroverted evidence upon this point sufficient to overcome any prima facie inference or presumption which might exist by reason of the fact that the cattle still bore the brand of Mary Lease. Where, as in the present case, the facts with reference to the transfer of possession are practically undisputed, it becomes a question of law whether such facts constitute a sufficient change of possession. (*Claypool* v. *Malta Standard Garage,* 96 Mont. 285, 30 Pac. (2d) 89, 92.)

After carefully considering the facts as disclosed by the record before us, we conclude that there was a sufficient change of possession of the cattle. "The law, however, does not require the parties to a sale to perform acts extremely inconvenient, if not impossible, but accommodates itself to their business, and the nature of their property; and therefore, as some kinds of property are not susceptible of immediate manual delivery, the law requires only such delivery and change of possession as the nature of the property will allow." (*Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707, 709; *Claypool* v. *Malta Standard Garage,* supra.) In the last-cited case we quoted with approval the following from 24 R. C. L. 40: "A delivery of the subject matter of a sale to a third person with the consent of the buyer to hold for him is a sufficient delivery and change of possession to validate the sale as against a subsequent purchaser or levying creditor of the seller." We there further said: "If a vendor of goods in the care and keeping of a third person directs him to deliver them to the vendee, and the party holding the goods consents to retain the goods for him and does so retain them, it is a sufficient delivery and change of possession." That is exactly what was done in this case. Accordingly, we hold that under the evidence in the record here the transfer of the cattle from Mary Lease to Lena Bremer was sufficient to divest the former of the title and

vest the same in the latter. It follows that plaintiff never had any lien upon the cattle in question.

The judgment of the district court must be, and is, reversed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied April 11, 1935.