HANSEN ET AL., APPELLANTS, v. JOHNSON ET AL., RESPONDENTS.

(No. 6,811.)

(Submitted October 13, 1931. Decided November 13, 1931).

[4 Pac. (2d) 1088.]

*Mr. W. E. Keeley,* for Appellants, submitted a brief and argued the cause orally.

*Mr. Myles J. Thomas, Mr. S. P. Wilson* and *Mr. J. R. Wine,* for Respondents, submitted a brief; *Mr. Wine* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Ralph Hansen and Raymond Shanley, as copartners, have appealed from a judgment in favor of the defendants, J. R. Wine and Charlie Johnson, entered in an action to foreclose a chattel mortgage and to have all claims of the defendants to the property therein described declared junior and subsequent thereto.

The uncontroverted facts are as follows: In April, 1929, the plaintiffs entered into a contract for the sale to Johnson, of certain real property situated in Powell county, wherein all parties to the contract reside. The consideration was $10,000, payable in installments, for the payment of certain of which Johnson gave three notes aggregating $1,321, secured by a chattel mortgage. A month later plaintiffs sold Johnson eight milch cows, taking his note for $1,000 in payment; this note provided for payment at the rate of $50 per month. In order to secure these payments a chattel mortgage was drawn by a bank official and signed by Johnson. It did not contain an accurate description of the purchased cows intended to be mortgaged, and the required affidavit of good

faith and acknowledgment of receipt of a copy were not signed by the respective parties. The defective mortgage was, nevertheless, marked "Filed" on presentation to the county clerk and retained in the files.

Johnson made but one payment on his $1,000 note and did not pay the three notes given in connection with the execution of the land contract and, consequently, plaintiffs seized and sold the property described in the first mentioned chattel mortgage, under power of sale therein conferred, and on September 16, 1929, commenced action on the $1,000 note. In this action plaintiffs ignored the defective mortgage and caused a writ of attachment to be levied upon the property supposed to be described therein, with other property not mortgaged.

On September 23, one week after suit was commenced, Johnson went to the law office of J. R. Wine, in Helena, and there executed and delivered to Wine his note for $900, payable on demand. Five days later Wine went to Garrison by train, where he was met by Johnson and taken to Deer Lodge by automobile. Shortly after his arrival in Deer Lodge, Wine commenced action against Johnson on the $900 note and caused a writ of attachment to be levied upon the property which plaintiffs held under their purported levy; for the purpose of this suit Wine employed S. P. Wilson, Esq., counsel for Johnson, as his attorney. That afternoon Wine, Johnson and Mrs. Johnson met in Mr. Wilson's office, and Wine, as attorney for Johnson, prepared and filed a motion to dissolve plaintiffs' attachment on the ground that the note on which the attachment action was based, was secured by the defective chattel mortgage; he attached thereto a certified copy of the mortgage. The motion was granted and plaintiffs' attachment dissolved on October 5, 1929, and thus Wine's attachment became a first lien upon the property and plaintiffs' security was destroyed, unless plaintiffs could establish the allegations of their complaint in the action at bar.

These allegations are to the effect that Johnson and Wine conspired together to accomplish the result suggested and, in furtherance thereof, Johnson gave to Wine a fictitious note

for $900 with the understanding that the latter would do just as he did in order to defeat and defraud plaintiffs of their security. In an attempt to establish these allegations, plaintiffs called Wine and Wilson as their witnesses. Wine covered the field so thoroughly as a witness for plaintiffs that defendants rested their case without introducing any testimony. Wilson admitted that, at the time plaintiffs commenced action on the $1,000 note, he was attorney for Johnson in other matters, and that about that time counsel for plaintiffs advised him that they were attaching, as, for some reason, the chattel mortgage was "no good," but denied that he, at any time, informed Wine of the existence of the chattel mortgage.

Wine testified positively and emphatically that on September 23 Johnson retained him to bring an action to set aside the land contract on the ground of fraud, and that no other matter than those matters relating to such an action was discussed; that at no time did Johnson, or anyone else, disclose to him that Johnson was indebted to plaintiffs in any other transaction than the land contract or mention to him the existence of the chattel mortgage here involved, or the pendency of the plaintiffs' attachment suit, until after his action was commenced and writ of attachment levied. He testified that he refused to take the cancellation suit on a contingent fee, fixed his fee at $1,000, and finally agreed to accept a note for $900, payable on demand, and a promise of $100 in cash at an early date, as the best Johnson could do.

The witness further testified that at the time he went to Deer Lodge his purpose was to go over the land in question and assemble material for his complaint in the cancellation action, and that he then had no thought of suing on his note, but that on the way from Garrison to Deer Lodge Johnson told him of the seizure and sale of personal property under the mortgage given in connection with the land contract, and of other actions and attachments by plaintiffs which would "clean" Johnson of all personal property, and that he then decided that he had better take action "if his note was ever going to be worth anything." He admitted that

his action did not affect his friendly relations existing between himself and his client and that, after he had sued Johnson and on the same day, Johnson employed him to move for the dissolution of plaintiffs' attachment, but asserted that it was only after his action was instituted and the papers were served on Johnson that the latter told him of the existence of the defective mortgage and the action of plaintiffs in ignoring it.

The action for the cancellation of the land contract was not instituted until October 29; some time before that date, it is suggested, the land contract was canceled by plaintiffs, but on inquiry, Wine stated that he did not know of this fact until after he commenced action; certainly it was in effect at the time Johnson gave Wine the $900 note.

The defective mortgage was valid as between the parties ▉ (*Reynolds* v. *Filzpatrick*, 23 Mont. 52, 57 Pac. 452), but was not entitled to record. (Sec. 8276, Rev. Codes 1921.)

It is conceded by the defendants that, under the provisions ▉ of section 8279, Id., the rules applicable to "encumbrancers" apply to creditors; each must act in good faith; we do not so hold (see *Cardenas* v. *Miller*, 108 Cal. 250, 49 Am. St. Rep. 84, 47 Pac. 474, construing a like statute), but for the purposes of this opinion will consider the effect of the theory on which the case was tried on Wine's right to attach the property.

To constitute one a subsequent encumbrancer "in good faith" he must have acquired a lien upon the property without knowledge, actual or constructive, of the existence of a prior mortgage. (*Chester State Bank* v. *Minneapolis T. M. Co.*, 58 Mont. 44, 190 Pac. 136.)

The mortgage, although physically filed, was not entitled ▉ to filing and, therefore, imparted constructive notice to no one (see *Parsons* v. *Rice*, 81 Mont. 509, 264 Pac. 396, and cases therein cited); hence Wine did not have constructive notice. This is conceded by counsel for plaintiffs, but it is contended that, as his attorney, Wilson, had notice, his knowledge was imputed to Wine.

It is true that an attorney, while on his client's business, is agent for the client, and a principal is deemed to have notice of that of which the agent has notice, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to his principal (sec. 7957, Rev. Codes 1921; *Healy* v. *Ginoff*, 69 Mont. 116, 220 Pac. 539; *Coldwell* v. *Grandin Inv. Co.*, 64 Mont. 518, 210 Pac. 765), but the rule as to agents generally is usually confined to knowledge acquired in the course of the employment, and, as to attorney and client, the rule does not pertain with reference to facts acquired prior to the employment or in the transaction of business for another client. (See extensive note 4 A. L. R. 1585, and particularly cases cited at page 1607.) Plaintiffs' success in the trial court, therefore, was dependent upon a showing of actual knowledge of the existence of the mortgage on the part of Wine at the time he commenced his action.

In order to find for the plaintiffs on this issue, the court would have been compelled to disregard all of Wine's positive testimony and construct fraud from the inferences to be drawn from the facts and circumstances showing that the witness must have had knowledge of the existence of the chattel mortgage in order to act as he did. This the trial court could have done.

Owing to its nature, fraud is provable by circumstantial evidence, and the direct and positive testimony of ,a party charged with fraud and "who would naturally swear to the bona fides of the transaction under investigation" in order to perfect his fraudulent design, may be overcome by the aggregate of trivial, remote and disconnected facts and circumstances disclosing fraud, as "a broken twig or a misplaced pebble" discloses the spoor of his game to the woodsman (*Roman* v. *Albert*, 81 Mont. 393, 264 Pac. 115, citing *Merchants' Nat. Bank* v. *Greenhood*, 16 Mont. 395, 41 Pac. 250, 851).

The inferences in this case render the conclusion that the opportuneness of Wine's action, following so soon after the note was given him, was a mere coincidence, a severe strain

upon the credulity of men versed in the practice of the law, and, had the trial court adopted the course above outlined, we would have no trouble in affirming a judgment in favor of plaintiffs, under the foregoing authorities.

However, Wine's testimony is not before us as triers of the facts; our power is that of review only, and even were we passing upon this testimony initially, it could not be said that it is so impossible as to be entirely unbelievable. Remarkable coincidences do occur in life and in the practice of the law. Whether or not the instant case presented one such was for the trial court to determine, not from the cold record as it is presented to this court, but with the witnesses before it, thus presenting methods of testing and determining the truth or falsity of the testimony not available to us.

From his superior coign of vantage, the learned trial judge, with more than a quarter of a century of experience in judging of the credibility of witnesses, and, as a judge of human nature over a long period of years, called upon to determine, from indicia furnished by manner and appearance, as to whether or not a witness was speaking the truth, found categorically, on every issue and every question presented, for the defendants and in so doing he was certainly guided by his well-known knowledge of the rules of law governing in such cases, among which are the following:

Among the disputable presumptions declared by section 10606, Revised Codes 1921, are "that a person is innocent of crime or wrong" (subd. 1), and "that private transactions have been fair and regular" (subd. 19). These presumptions prevail until overcome by evidence satisfactory to the trier of facts.

"In actions involving fraud, as in other cases where the facts present a double aspect, one consistent with fair dealing and the other involving dishonesty of purpose, the court, unless the scale decidedly preponderates for the latter, will strike the balance in favor of honesty and innocence." (1 Jones, Blue Book on Evidence, 100.)

Here, it must be remembered there are no conflicts or inconsistencies in the testimony,—it is all one way, in favor of defendants. Counsel for plaintiffs frankly concedes that he must rely solely upon inferences, strong in themselves, but which, when satisfactorily explained, show but a startling coincidence, and, whether or not the trial court should believe, or not believe, the explanation given, depended largely upon the conduct of the witness on the stand, his manner of testifying, appearance and demeanor while testifying— matters not contained in the cold record.

"Words merely appearing upon the printed page are far less communicable than when they are expressed with the tongue, * * * ; the speaker can put into his words something which the writer cannot put there * * * ; he may convey by the tone of his voice, by a look or a gesture, suggestions too subtle for expression on the written page." (*Labbitt* v. *Bunston*, 84 Mont. 597, 277 Pac. 620; *State* v. *Sawyer*, 71 Mont. 269, 229 Pac. 734.)

It has been said that "to speak the truth is natural and instinctive, while the utterance of falsehood does such violence to a man's moral nature as to be almost always more or less perceptible in the voice, the countenance, the language, and the whole manner of the witness." (*Hodge* v. *Buffalo*, 1 Abb. N. C. (N. Y.) 356.)

It is for such reasons as the foregoing that, in determining questions of fact, "due allowance must be made for the more advantageous position occupied by the trial judge, in that he has had the opportunity to observe the conduct and appearance of the witness while testifying" (*Barnard Realty Co.* v. *City of Butte*, 55 Mont. 384, 177 Pac. 402), and, unless the evidence, not affected by these considerations, clearly preponderates against the court's findings, they must be accepted by this court as conclusive. (*Boyd* v. *Huffine*, 44 Mont. 306, 102 Pac. 228; *Bosanatz* v. *Ostronich*, 57 Mont. 197, 187 Pac. 1009; *Kummrow* v. *Bank of Fergus County*, 66 Mont. 434, 214 Pac. 1098; *Labbitt* v. *Bunston*, above.)

As was said in *Boyd* v. *Huffine,* above: ''While, on the whole, it may be said that the trial court might have reached a different conclusion, it cannot be said that the evidence shows a decided preponderance against any findings. Under the circumstances this court must accept them as conclusive.''

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied December 2, 1931.