WALKER, Respondent, v. MINK, et al., Appellants.

No. 8514

Submitted March 23, 1945. Decided May 15, 1945.

158 Pac. (2d) 630

352

Mr. F. C. Fluent, of Butte, for appellants.

Mr. J. F. Emigh and Mr. Harlow Pease, both of Butte, for respondent.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Action by Earl H. Walker, executor of the estate of Peter Sarajcic, deceased, versus Julia Mink, Katherine Bailey, and Bailey Loan & Realty Company, for the cancellation of a promissory note, dated May 23, 1941, in the amount of $2,325, signed by the deceased and payable to Julia Mink, and to cancel a deed of the same date, executed by deceased and purporting to convey to Julia Mink certain real estate in Butte, Montana.

So far as pertinent, the complaint alleges that during his lifetime Sarajcic was the owner of the real estate described in the deed; that Julia Mink is one and the same person as Katherine Bailey and is a fictitious name, and that all moneys and debts referred to in the complaint were moneys of Katherine Bailey and the Bailey Loan & Realty Company, hereinafter referred to as defendants, and debts due to them; that on or about May 23, 1941, Sarajcic was indebted to defendants in the sum of $325, and on said date, as evidence thereof, executed and delivered a promissory note in that amount, payable two years after date to Julia Mink; that to secure the payment of said note Sarajcic simultaneously executed and delivered to defendants a certain deed to his said real estate, intended as a mortgage; that on January 8, 1942, Katherine Bailey procured from deceased a note in the amount of $325, given as a renewal of the note of May 23, 1941; that to secure such renewal note deceased, on January 8, 1942, executed and delivered to Katherine Bailey, in the name of Julia Mink, a real estate mortgage upon the real estate described in the deed, which mortgage was duly recorded in Silver Bow county; that the only debt owing from deceased to defendants is $325, represented by said renewal note; that three days after the death of Sarajcic, defendants affixed to said deed, and cancelled, revenue stamps in the amount of $4.50, and placed the deed of record.

The complaint further alleges that prior to recording the deed, with the purpose and intent of defrauding the Sarajcic estate, the defendants raised, altered and changed the note of May 23, 1941, by inserting therein, on a line above the words "Three Hundred and Twenty-five Dollars," the words "Two Thousand," and by inserting in the upper left-hand corner, before the figures "325," the figure "2," so that it appears from said note that the same is for $2,325 instead of $325, the amount payable thereby when same was executed; that the debt represented by the note of May 23, 1941, no longer exists, but same was renewed and is represented by the note of Janu-

ary 8, 1942; that the said deed is void, without force or effect either as a mortgage or a transfer of property, and constitutes a cloud upon the real estate therein described; that defendants have no right, title, interest in or lien upon said property, except the mortgage given to secure the note of January 8, 1942.

Defendants' answer, in addition to a denial in general terms of the material allegations of the complaint, contains two affirmative defenses, the first being designated, "A first affirmative defense and as a cross-complaint and counter-claim." This alleges execution and delivery by Sarajcic of a promissory note dated January 8, 1942, payable to Julia Mink, in the amount of $325, due two years after date; that to secure the payment thereof, Sarajcic simultaneously executed and delivered to Katherine Bailey, under the name of Julia Mink, a mortgage of same date, covering the Butte real estate owned by Sarajcic, which mortgage was recorded; that Katherine Bailey, under the name of Julia Mink, is the owner of said note and mortgage, and the amount thereof is due and unpaid. Judgment for the amount of the note, with interest and costs, and foreclosure of the mortgage is prayed for.

The second defense is entitled, "A second affirmative defense and as a supplemental cross-complaint and counterclaim." This alleges execution and delivery by Sarajcic to Katherine Bailey, under the name of Julia Mink, of a promissory note dated May 23, 1941, payable to Julia Mink, in the sum of $2,325, due two years after its date; that simultaneously Sarajcic executed and delivered a certain deed, conveying to Julia Mink the real estate described in the mortgage mentioned, which deed was intended and agreed by the parties to be and operate as a mortgage of said premises, and as security for payment of said note. Judgment is prayed for in the sum of $2,325, with interest and costs, and that the said deed be declared to be a mortgage, and foreclosed.

By reply, plaintiff denies generally the material allegations of the second affirmative defense, and expressly that the

estate is indebted to defendants in any sum in excess of $325.

The cause was tried by the Honorable Jeremiah J. Lynch, judge of the district court, without a jury. Findings of fact and conclusions of law were adopted upholding plaintiff's contentions. Judgment was given in favor of plaintiff, declaring the note of May 23, 1941, and the deed of same date, void, cancelling the note and cancelling and annulling the deed, and extinguishing the cloud created thereby. The court also found, and declared by its judgment, that Julia Mink and Bailey Loan & Realty Company are, as to all of the issues of this cause, fictitious names only, used by Katherine Bailey in her own acts and transactions as an individual and natural person.

The question presented to us is whether the record contains substantial evidence to support the trial court's findings and judgment. That, in turn, depends upon the sufficiency of the facts presented by the evidence to establish a substantial basis for the court's finding that the note of May 23, 1941, was raised, altered and changed, in the manner alleged, from $325 to $2,325, and that no part of said note is due and unpaid.

Defendants specifications of error, nineteen in number, can be summed up as follows: That the court erred in adopting its findings and conclusions, and in refusing to adopt the findings and conclusions submitted by defendants; that the court's findings and conclusions are not supported by the evidence, and are against the preponderance of the evidence; that the court erred in entering judgment in favor of plaintiff and against defendants; that the court erred in denying the motion of defendants for a new trial.

The record is rather voluminous, including a large number of exhibits. We have carefully examined it, and shall discuss only that part which we consider as bearing upon the determination of the decisive question stated above.

Prior to 1929 the Bailey Loan & Realty Company, a corporation, was operated in Butte by John G. Bailey. In 1929 Bailey died, and the conduct of the business was taken over by his

wife, Katherine Bailey, defendant. The term of the corporate existence expired in 1933, and thereafter Katherine Bailey carried on in business under the same name. Sarajcic had been a client of the company and of Katherine Bailey for several years prior to 1939. On April 19, 1939, he obtained a loan from Katherine Bailey, and executed his note for $250, dated that day, payable to Julia Mink two years after date. A statement found in Sarajcic's effects apparently details the items totalling the amount of the note, including advance interest, commission and preparation of papers, and taxes paid. This note was secured by a real estate mortgage on Sarajcic's Butte property, which was recorded. Katherine Bailey testified that this note was renewed by a new note dated January 8, 1942, in the amount of $325, the difference in amount being accounted for by the addition of cost of an abstract and insurance, commission, and interest due since April 19, 1940. A new mortgage on the real estate was executed to secure this renewal note and recorded subsequently to the recording of a mortgage covering the same real estate in favor of one Roden, hereinafter referred to. The $250 note was endorsed by Katherine Bailey, on the back thereof, "Paid in full by new note and mtge. Julia Mink, by K. Bailey." The date of this endorsement does not appear on the instrument, but Katherine Bailey testified that it was made on the date of the renewal note, January 8, 1942. There is no direct evidence that the $250 note was paid or renewed at or about the time of its maturity. There was found in Sarajcic's effects a statement on the bill head of Bailey Loan & Realty Company, dated May 16, 1941, totalling $325, the items consisting of loan due, $250, interest, abstract continued to April 19, 1939, fire insurance, interest on abstract and insurance payments, and commission on new loan. The figures "41" in the year date were written in pencil. If authentic, this statement indicates that there was due from Sarajcic to Julia Mink, on May 16, 1941, the sum of $325. Katherine Bailey testified that the statement does not correspond with her records in at least one respect, and is incor-

rect; that the year had been filled in; that she could not say when the statement had been delivered to Sarajcic; she refused to say positively that she had not furnished the statement to Sarajcic, but did say that it was not a copy of her records. She testified that the $250 loan was not renewed when it became due; that the May 16th statement was not prepared for the purpose of a renewal; that "there was nothing said about $250 note until Mr. Walker wanted more money."

In December, 1941, Sarajcic was ill, and sent Earl H. Walker to Mrs. Bailey to negotiate a new loan to enable Sarajcic to pay what he then owed Mrs. Bailey, taxes on his property, and various outstanding bills. During the negotiations Walker told her that Sarajcic owed about $540 for taxes and five or six hundred dollars on other bills; that $1,200 would pay most of the indebtedness. Walker testified as to the following conversation at that time: "And also, I says, he owes you an amount here; and I said, 'How much does he owe you,' and she said '$325.00 is his bill here with Julia Mink.'" Mrs. Bailey told Walker that perhaps Julia Mink had the money and would make the loan,—she would write and see. Early in January, 1942, she wrote Sarajcic that she would make the loan for $1,200. In the meantime Sarajcic had decided to go to Rochester for treatment, and Walker asked Mrs. Bailey to increase the loan to $1,500. She told him that she had arranged for a $1,200 loan from Mr. Roden, but would renew the $250 loan and take a new mortgage for the $325 due on it, which would be a second mortgage, the Roden mortgage to be a prior encumbrance. The negotiations were concluded on that basis. Mrs. Bailey satisfied the $250 mortgage, recorded the Roden mortgage, and about a week later recorded the mortgage to secure the $325 renewal note to Julia Mink.

In June, 1941, one Juan Arispe, a friend of Sarajcic, called on Mrs. Bailey, at Sarajcic's request, for the purpose of borrowing for the latter $105. He testified that she refused this request, "She told me, she said she never let me have the money because Peter owed already $325.00."

With reference to the $2,325 note in question, Katherine Bailey testified that she had known Sarajcic since 1924 or 1925; that on May 14, 1936, she loaned him $800 for two years, which was secured by mortgage, on which $64 was paid as interest one year later. On May 15, 1939, the loan was increased by $400, and a new note and mortgage taken in the total amount of $1,346. The entry in her journal of that date was, ''Note and loan increased to $1,346.00, two years at 8%.'' On May 15, 1940, $107.70, unpaid interest, was added to the principal amount, so shown in the ledger. Defendants' exhibit 4, being a page taken from defendants' ledger, was admitted in evidence without objection. The items of the account with Sarajcic date from May 14, 1936, to May 23, 1941, and total $2,325, including an item of $735, additional loan on the latter date. Under that date appears in the ledger the notation ''New note and Deed (in safe).'' She testified that on May 15, 1941, she loaned an additional $735 to Sarajcic, and took a new note for $2,325, and the deed in question as security, both of which have been continuously in her possession. As above stated, the deed was not placed of record, and revenue stamps thereon cancelled, until three days after Sarajcic's death. Neither of the mortgages referred to above were ever recorded. Mrs. Bailey's explanation of her failure to record them was, ''Because I didn't want to record it. In fact, there was a mortgage on there that I was trying to get a release from and the man was in Ireland * * *. [This release was received in May, 1937.] I don't always record my mortgages.'' When asked why she recorded the $250 mortgage and not the one for $1,346, she said: ''I asked Mr. Sarajcic if we would make a new loan to include the $250 and he said no, he only wanted it for a short time and would pay me off at $10.00 a month. He wanted that independent.''

''Q. That's why you recorded the mortgage for $250.00 and did not record the mortgage for $1,346.00? A. Yes.

''Q. Because he was going to pay $10.00 a month on the small mortgage? A. Well, it was a smaller loan and I ex-

pected it to be paid off at $10.00 a month. It was a small accommodation loan. I made it to accommodate him. * * *

"Q. You were not worried that somebody might get ahead of you on this mortgage you held off the record? A. No, because I had the mortgage and it was dated and I would put it on record if I had to.

"Q. You have been in the real estate business how long? A. Thirteen years now.

"Q. Do you know the purpose of recording mortgages? A. Well, I don't know. Maybe I didn't do right but I did it my own way."

Mrs. Bailey testified that the three advances of $800, $400 and $735, respectively, were paid to Sarajcic in cash. No receipts were produced. Payments to him on the other loans, including the Roden loan of $1,200, were made by check. It therefore appears that in those transactions between defendants and Sarajcic in which the mortgages were recorded, payments to the latter were made by check; where the mortgages were not recorded, payments were in cash. There is some discrepancy in Bailey's testimony as to the source of the money with which the cash payments were made. In a deposition taken before trial she testified that as to the item of $735 she did not have enough in her checking account and had to get it from the bank. No evidence of such a transaction with a bank was produced. At the trial she testified:

"Q. And where did you get the money in 1936 to give to Mr. Sarajcic? A. Out of my own money. I had it.

"Q. Where did you get it? Did you have it in the safe or get it from the bank? A. I had it in the safe. I only have a checking account in the bank and not so much money. Only a checking account just for my business. * * *

"Q. In 1939, where did you get the $400.00 you gave to Mr. Sarajcic? A. I guess I had it in the safe. I either had it in the safe or had it at home. I had it and gave it to him anyway.

360

"Q. And in 1941, in May, where did you get the $735.00? A. I didn't have that; I had to go out and get it.

"Q. Where did you get it? A. Got it out of my money. It wasn't in my checking account.

"Q. Where did you have it? A. I had it home or in the safe."

Defendants were unable to produce loan statements reflecting the 1936 loan and renewals thereof. Such statements were furnished on the other loans and renewals including the Roden loan. Mrs. Bailey's only excuse for not furnishing statements for the 1936 loan, and renewals, was that she figured it up in pencil and told him what he owed. The amounts of taxes due were withheld from the Roden loan and from the $250 loan and the $325 loan of January 8, 1942, but not so from the three advances constituting the $2,325 indebtedness.

During the negotiations between Walker and Mrs. Bailey in December, 1941, the $2,325 note was not mentioned.

The two mortgages which Mrs. Bailey testified were given to secure the $800 and $400 advances were not produced, nor were the notes therefor.

Mr. and Mrs. Andy Roden testified that when they furnished $1,200 for the loan to Sarajcic, they were told by Mrs. Bailey at her office that the mortgage given them to secure their loan was a first mortgage on the property involved.

During the course of her dealings with Sarajcic, Mrs. Bailey procured for him three fire insurance policies covering his Butte property, dated respectively June 23, 1937, February 28, 1940, and June 22, 1940. The two latter contain "loss payable" riders in favor of Julia Mink. The first, issued subsequent to the 1936 loan of $800, contains no such clause.

The items constituting the alleged $2,325 indebtedness appear on a loose-leaf sheet from defendants' ledger, and correspond with entries in defendant's bound journal, covering the period May 14, 1936, to May 23, 1941. All of such entries were made by Katherine Bailey, who testified that they were

made in the regular course of business, as the transactions occurred, and are correct.

Plaintiff's theory is that the note in question was originally a valid note for $325, signed by Sarajcic on May 23, 1941, to renew the original $250 note, which became due April 19, 1941, about one month prior to the date of the note in controversy. That the $250 note was not surrendered to Sarajcic when such renewal note was executed, but was retained by defendant and thereafter renewed through Walker, and on January 8, 1942, surrendered upon the execution of the new note of that date, which was secured by the new mortgage; that the $325 note of May 23, 1941, executed two days after the statement of May 21, 1941 was prepared, was thereafter raised to $2,325 to create an apparent obligation for the larger amount. They contend that this theory is supported by the following evidence:

1. The appearance of the note itself. The normal and usual way to write in the amount would be to put it on one line, for which there was sufficient room, thus: "Two Thousand, Three Hundred and twenty-five and no/100 Dollars." In the note involved the amount was written in two lines, thus:
"Two Thousand,
Three Hundred and twenty-five and no/100
------------------------------------------------------------------------------------ Dollars."
The blanked-in space after the figures "no/100" was more than ample to have accommodated the words "Two Thousand."

From an examination of the note with the aid of a magnifying glass, it is apparent that the words "Two Thousand" were written with a different ribbon, or with the same ribbon in a different condition of wear or use, than were the words "Three Hundred and twenty-five" appearing directly below. The letters in the lower words are more solid, and the difference in the ink impression and the marks of the ribbon threads is unmistakable. The same differences are apparent between the figure "2", and the figures "325" immediately following it in the upper left-hand corner of the note. The entire note seems to have been written by the same typewriter.

Since the note was in her possession at all times, Katherine Bailey alone had any opportunity to alter it.

2. No evidence appears that any person, other than the defendant, saw this note prior to Sarajcic's death.

3. Testimony of the witness Arispe, undisputed, that in June 1941 Mrs. Bailey stated that Sarajcic owed her $325.

4. Evidence that throughout the negotiation between Walker and Mrs. Bailey in December 1941, nothing was said by her to the effect that Sarajcic was indebted to her in any amount except $325, of which $250 was secured by a mortgage, which she agreed to release upon taking a new mortgage for $325, to be subservient to the Roden mortgage.

5. The deed in question was not recorded or revenue stamps affixed until three days after Sarajcic's death; that when delivered to the Recorder it bore on the cover the instruction, "Do Not Publish."

The demonstrated purpose of defendant was to claim the deed as an outright conveyance instead of a mortgage. This was shown by the affixing of the revenue stamps, and by demands upon tenants of the property for payment of rental to defendant, made shortly after the deed was recorded.

6. Evidence of defendant's fraudulent intent, shown by the following conversation between her and Mr. Emigh (attorney for the Sarajcic estate), testified to by him: "I said to her that she didn't have any right to collect rentals because if the deed was given to secure the note, it was nothing but a mortgage and did not give her the right to the rentals or to the possession of the premises. She said to me, 'I can throw the note away but I got the deed.' " The implication urged being that by throwing away the note she could destroy the evidence that a pretended loan existed.

7. Evidence that on May 16, 1941, Sarajcic was indebted to defendant in the amount of $325, shown by the statement of that date and amount. This is the statement in which the figures "41" of the year appear in pencil, which defendant denies she wrote.

8. Failure of defendant to produce the two mortgages she testified were given by Sarajcic to secure the $800 loan and the renewal note of $1,346, which were not recorded.

9. Payment to Sarajcic, in cash, of all the items constituting the indebtedness of $2,325, while payments under all other transactions were made by check. In this connection it is highly significant that no receipts were produced for the alleged loans of $800, $400 and $735.

10. Failure to record the instrument given as security for $2,325, while recording mortgages given to secure smaller amounts.

11. The fact that the insurance policy dated June 23, 1937, bears no mortgagee clause, while those dated in February and June, 1940, bear such clauses in favor of Julia Mink.

12. The statement by defendant to Roden and his wife that their mortgage was the first mortgage on the premises, at a time she was concealing a deed claimed by her to be a valid mortgage to secure $2,325.

While plaintiff's evidence is partly negative and circumstantial, we believe it sufficiently substantial to support the findings and judgment of the trial court. In cases such as this the findings of the trial court will not be disturbed where the record contains substantial evidence upon which they may be sustained. Sanders v. Lucas. 111 Mont. 599, 111 Pac. (2d) 1041; Lewis v. Bowman, 113 Mont. 68, 121 Pac. (2d) 162.

Here a question of fraud is involved, which has been resolved by the trial court. The rule is that good faith is presumed and fraud is never presumed. The burden of proving it is on the party alleging it. A mere suspicion of fraud is not sufficient. Cuckovich v. Buckovich, 82 Mont. 1, 264 Pac. 930; Harrison v. Riddell, 64 Mont. 466, 210 Pac. 460; Costello v. Shields, 99 Mont. 335, 43 Pac. (2d) 879; Teisinger v. Hardy, 86 Mont. 180, 282 Pac. 1050.

But fraud may be proved by circumstantial evidence. In Hansen v. Johnson, 90 Mont. 597, 4 Pac. (2d) 1088, 1090, this

court said: "Owing to its nature, fraud is provable by circumstantial evidence, and the direct and positive testimony of a party charged with fraud, and 'who would naturally swear to the bona fides of the transaction under investigation' in order to perfect his fraudulent design, may be overcome by the aggregate of trivial, remote, and disconnected facts and circumstances disclosing fraud, as 'a broken twig or a misplaced pebble' discloses the spoor of his game to the woodsman." Merchants Nat. Bank v. Greenhood, 16 Mont. 395, 41 Pac. 250, 851.

And the fact that the record contains positive testimony ▮▮▮▮ contrary to the findings does not require a reversal. As was said by this court in Roman v. Albert, 81 Mont. 393, 264 Pac. 115, 119:

"Owing to its nature, fraud is provable by circumstantial evidence, and a wide latitude is allowed in assembling trivial, remote, and disconnected facts and circumstances which are interpreted by bringing them all together and contemplating them 'all in one view' (Bump on Fraudulent Conveyances, 759), and this accumulation is weighed against the direct evidence of those charged with perpetrating the fraud who would naturally swear to the bona fides of the transaction under investigation. We are not therefore, in reviewing the testimony contained in the record, precluded from sustaining the findings of the trial court by reason of the fact that the record contains positive and uncontradicted statements contrary to those findings.

"Nor is the trial court bound by such testimony; it is not bound to believe all that it hears: 'The appearance and demeanor of the witnesses, their manner of testifying, and the probability or improbability of the truth of their statements are all to be considered in connection with the other facts and circumstances in the case. When the statements of witnesses, although positive, and not directly contradicted by other witnesses, are improbable, contradictory, and inconsistent in themselves, when they relate to alleged transactions with persons

who by death or absence are unable to dispute them, when the witnesses are directly and pecuniarily interested in the result of the controversy, * * * and the attendant circumstances are such as to cast suspicion upon the entire transaction as narrated by them, the court may disbelieve such witnesses and disregard their testimony.' Reid v. Hennessy Mercantile Co., 45 Mont. 383, 123 Pac. 397;'' and cases cited.

Obviously the trial judge disbelieved the positive and direct evidence of the defendant Katherine Bailey, consisting of entries in her books of account and testimony based thereon. -In this, in view of the evidence adduced by plaintiff, both positive and circumstantial, he was justified. We must hold that the findings are sufficiently supported by substantial evidence, and, therefore, they will not be disturbed.

The judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Adair, and Angstman, concur.